## A. P. BORGER V. THE STATE.

No. 16361. Delivered March 28, 1934.

6

The opinion states the case.

*Hoover, Hoover & Cussen,* of Canadian, and *Lackey & Lackey,* of Stinnett, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for receiving a deposit in an insolvent bank; punishment, two years in the penitentiary.

There were three counts in the indictment. The case was submitted only on the third count, which alleged that appellant was president of the Borger State Bank, etc., and received and assented to the reception of a deposit of $110.00 from E. C. Carver on January 9, 1932, averring as follows:

"Into the Borger State Bank of Borger, Texas, a banking institution, after he, the said A. P. Borger, president as aforesaid of said The Borger State Bank of Borger, Texas, a corporation as aforesaid, had knowledge of the fact that said The Borger State Bank of Borger, Texas, was then and there insolvent and in failing circumstances at the time that the said A. P. Borger, president as aforesaid of said The Borger State Bank of Borger, Texas, a corporation as aforesaid, unlawfully received and assented to the reception of the said deposit of money aforesaid."

Appellant made a motion to quash the indictment, based on the claim that nowhere in said count was there an affirmative averment of the insolvency of said bank at the time of the reception of said deposit. Appellant cites in his brief the cases of Fleming v. State, 62 Texas Crim. Rep., 653, and Pool v. State, 58 S. W. (2d) 120. We think the indictment in the Fleming case, which was held bad, materially different from the one in the case at bar. In that case it was alleged that the deposit was received "After said Western Bank & Trust Company was in failing circumstances and insolvent, and after he, the said Fred Fleming, as president aforesaid, knew that the said Western Bank & Trust Company was in failing circumstances and insolvent," etc. It might be that a man or corporation, banking or otherwise, might at some past time have been deemed insolvent and in failing circumstances, who or which might have weathered the storm and thereafter recovered from such

condition, and been able to continue in business, and have been thereafter solvent, and that in such case an averment that such person or concern at some indefinite prior date was insolvent, or in failing circumstances,—would not be or amount in law to an allegation that same was at some subsequent named date, then and there insolvent. We regard the Fleming case on this point, as on close lines, but being able to distinguish it, hesitate to overrule same.

In the case at bar it is alleged that appellant was on January 9, 1932, the president of The Borger State Bank, * * * and did then and there receive and assent to the reception from E. C. Carver of a deposit of money * * * after he, the said Borger, * * * had knowledge of the fact that the said Borger State Bank * * * was then and there insolvent and in failing circumstances at the time he as president * * * unlawfully received and assented to the reception of said money from said Carver into said bank. We think this a sufficient averment that said bank was at the time of the reception of said deposit then and there insolvent, and that appellant had knowledge of such fact, —and that hence the motion to quash was properly overruled.

There is serious complaint, properly raised and presented, that the court failed to charge on circumstantial evidence. We have carefully considered the facts, and are of opinion that the contention of appellant in this regard must be upheld. As material fact issues in a case such as this, it must be established that the bank was insolvent and in failing circumstances at the time of the reception of the deposit, and that the accused knew that fact when said deposit was received, or debt created, etc. The deposit referred to was received in the instant case on January 9, 1932, by someone in The Borger State Bank of which appellant was president. On that date, and evidently some hours after said deposit was made, a large deposit, referred to as money belonging to the Welfare Association and consisting of several thousand dollars,—was withdrawn from said bank upon the insistence of a large number of influential citizens interested therein. The record shows that on the next day appellant went to Amarillo and had a conference with Mr. Swaim, a State bank examiner, and a group of banker friends of appellant at said place. Mr. Swaim testified that appellant told him then that they were having unusual withdrawals from the bank, and that he had gone as far with it as he could go. Witness had made examination of the affairs of said bank about the last of November, 1931.

Mr. Ware, a banker of Amarillo, for the defense testified

that he was present on January 10, 1932, at a conference between appellant and Mr. Swaim and others; that the cause of this meeting was the fact that appellant had become alarmed by withdrawals from said bank, especially it seems because of the withdrawal of a large deposit belonging to a welfare association which had been demanded and withdrawn by some twenty-five or more prominent citizens, said withdrawal being the afternoon or night before said conference. Mr. Ware further testified that he heard Mr. Swaim tell appellant, in substance, that the latter was unduly alarmed in regard to this withdrawal; that he ought to go back to Borger and see the people who might be interested in putting in more money; that he had paid his deposits from six hundred thousand dollars down to some sixty or eighty thousand, and that by staying and fighting appellant probably would be able to take care of the situation. Appellant testified to the same conversation with Mr. Swaim, and further that when the deposit referred to, which might be called the Carver deposit, was received,—he, appellant, had then no reason to believe the bank was insolvent or in failing circumstances; that the heavy withdrawals on that day, and especially the withdrawal of the deposit of the Welfare Association, demanded by the number of influential citizens connected therewith,—caused him to have the conference referred to, after which it was decided that it would be best to turn the affairs of the bank over to the State Bank Examiner, which was done.

No witness swore that the bank was insolvent or in failing circumstances further than as a deduction and inference from general statements made. The testimony showed that the bank had loans out amounting to something over $180,000.00, and that the amount of its deposits were around $170,000.00, at the time the bank closed. There is no testimony as to what other assets or property, if any, the bank had at said time. The conclusion of insolvency and failing circumstances being but a deduction from other testimony given, it seems plain that the court should have submitted the case on the law of circumstantial evidence. We so held in a similar case. See Pool v. State, 58 S. W. (2d) 120.

The point was also made on the trial that there was a variance between the case pleaded in the indictment and that made by the testimony. It was alleged that the bank received a deposit from E. C. Carver, after it was known to appellant as president that said bank was insolvent, etc. The proof showed that the deposit made was one by the Carver Funeral Home, a corporation, which deposit was brought to the bank by E. C. Carver. It is claimed that this is a variance. We find no exact

precedent, nor is it clear that the indictment must of needs allege the name of the depositor,—but we are of opinion that a proper averment would have been one giving the name in which the deposit was entered on the bank books. In Fleming v. State, supra, it is said: "This statute carries with it the distinct idea that the reception of such deposit must be attended with such circumstances as indicate that the accused received the deposit when there was no intention to return the money, or for the purpose of placing the deposit in such condition that the depositor could not recover the deposited property. * * * The statute carries the further idea that the deposit creates the relation of debtor and creditor."

Manifestly money sent to a bank by a messenger, porter or clerk or some concern would be improperly credited to such messenger, clerk, etc. It would seem sound to say that the name of the party who merely brings the money, is not necessarily the name of the person referred to in this statute as the depositor, and that a correct allegation, if demanded at all,— would be to name the person owning the fund and to whose credit same was placed when deposited. We have often held that when matters of description are laid in an indictment, they should be proved as laid. Authorities are cited in Smith v. State, 298 S. W., 286. We are of opinion that there was a variance.

There are other matters complained of on the trial which will likely not occur should there be another. For the reasons set forth, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*